UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**EVELYN CENTENO,**

              **Case No.:**

      **Plaintiff,**

 -against-

**ASSET ACCEPTANCE, LLC,**
**SCOTT SHARINN, and**
**SHAWN CLAUTHER**

      **Defendants.**
-------------------------------------------------------------------X

## COMPLAINT AND JURY DEMAND

  Plaintiff Evelyn Centeno ("Ms. Centeno") brings suit against attorneys of the debt collection law firm Sharinn & Lipshie, P.C. ("S&L"), Managing Attorney Scott Sharinn and Associate Shawn Clauther (collectively "the S&L Defendants"), and putative judgment creditor Asset Acceptance LLC ("Asset Acceptance") for violating the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and for committing conversion by executing on and refusing to return the funds of an Individual Retirement Account ("IRA"), and the S&L Defendants for violating N.Y. Jud. Law § 487.

### Summary of Claims[1]

  In 2003, Asset Acceptance, LLC, through its collection law firm Sharinn & Lipshie, P.C., filed a collection lawsuit against now-Plaintiff Evelyn Centeno in state court seeking to collect a debt she did not owe, and obtained a judgment by using a false affidavit of service.

  In January of 2018, more than 14 years later, Ms. Centeno tried to transfer funds in her Chase Bank account only to find out that all of the money in her Individual Retirement Account (IRA) had been withdrawn. After investigating, Ms. Centeno learned that Sharinn & Lipshie and

---

[1] This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

Asset Acceptance had executed on her IRA on January 5, 2018. In correspondence and in court, Ms. Centeno provided Defendants clear documentary evidence that the executed funds were exempt from collections, but Defendants refused to return any of the money until nearly 10 months after the money was taken from Ms. Centeno's IRA.

On January 27, 2018, Ms. Centeno sent Defendants a letter with bank records demonstrating the money was exempt, and asked for the basis of the lawsuit. At this point, any retention of the executed funds was clearly willful conversion. Ms. Centeno received no response from Defendants. Confused, scared, and not knowing what to do, Ms. Centeno learned in May, 2018 of the free legal services provided by CAMBA Legal Services, and retained them to assist.

In May 10, 2018, Ms. Centeno, through CAMBA, filed an Order to Show Cause to vacate the default judgment and, regardless, to have the exempt money returned. On May 21, 2018 attorney Shawn Clauther filed the Opposition to the Order to Show Cause. In the Opposition, Mr. Clauther claimed that Ms. Centeno had not filled out an Exemption Claim Form and thus her IRA was not protected from garnishment. Managing attorney Scott Sharinn, who directs the collection work of the firm, appeared at court repeatedly to oppose the motion to vacate and the motion to return money. In their Opposition, Mr. Clauther claimed Mr. Sharinn sent a response (to the wrong address) to Ms. Centeno's January 27, 2018 letter, but, in any event, Mr. Sharinn's response entirely ignored Ms. Centeno's evidence that the executed upon funds were exempt, and instead indicated that he and his firm would continue further collections.

On June 19, 2018 Ms. Centeno filed her Reply providing additional documentary evidence that the money was exempt and argued that whether the executed funds were exempt retirement did not turn on the completion of the exemption claim form, which Ms. Centeno was not given in any event.

Finally, the court on September 6, 2018 ordered the vacatur of the default judgment and that "any funds collected in connection with the enforcement of this judgment, including fees, shall be returned to the defendant forthwith." While most of the funds have been returned, there are still outstanding funds that Ms. Centeno has yet to receive. Defendants Asset Acceptance, Scott Sharinn, and Shawn Clauther have had several opportunities to mitigate the harm of their wrongful conduct since Ms. Centeno sent them a letter in January giving notice that the funds were exempt. Instead, Defendants fought with Ms. Centeno to the bitter end against her Order to Show Cause. Defendants have violated the FDCPA and committed conversion, and the S&L Defendants have violated Judiciary Law § 487.

### A. JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the FDCPA. Jurisdiction of the Court arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law under the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Queens County, New York.

### B. PARTIES

3. Plaintiff Evelyn Centeno ("Ms. Centeno") is an individual currently residing in Queens County, New York.

4. The law firm Sharinn & Lipshie, P.C. ("S&L") has not been named as a Defendant in this case because, upon information and belief, the firm's discharge in Chapter 7 bankruptcy and

winding down has made action against it unfeasible.

5. However, during the course of the wrongful conduct at issue here, from November 2017 to the present time, S&L only employed three attorneys: Vice President and Managing Attorney Scott Sharinn, Associate Shawn Clauther, and Harvey Sharinn, who is semi-retired and is not involved in litigation. Therefore the actions of S&L and the action of the individual defendants Scott Sharinn and Shawn Clauther are virtually synonymous with the actions of S&L. In particular Scott Sharinn, as the managing attorney for the firm, makes the decisions in how to proceed in debt collection litigation.

6. Defendant Scott Sharinn ("Mr. Sharinn") is an individual who is a resident of Queens County, New York. Scott Sharinn was an attorney at Sharinn & Lipshie, a law firm with a principal place of business in Uniondale, New York 11553. Scott Sharinn was personally engaged in the debt collection violations committed by S&L while doing business in New York.

7. Defendant Shawn Clauther ("Mr. Clauther") is an individual, who upon information and belief, is a resident of the State of New York. Shawn Clauther was an attorney at Sharinn & Lipshie, a law firm with a principal place of business in Uniondale, New York 11553. Shawn Clauther was personally engaged in the debt collection violations committed by S&L while doing business in New York.

8. Defendant Asset Acceptance LLC ("Asset Acceptance") is a foreign limited-liability company organized and existing under the laws of the State of Delaware. Asset Acceptance engages in business in New York and maintains a designated agent for service of process in New York. Asset Acceptance is the putative judgment creditor.

9. The Defendants are "debt collector[s]" as defined in 15 U.S.C. § 1692a(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed, or due or asserted to be

due another. Defendants are also "debt collector[s]" as defined in 15 U.S.C. § 1692a(6) as they have the principal purpose of the collection of debts.

### C. STATEMENT OF FACTS

10. On or about July 1, 2003. Asset Acceptance, LLC, through its collection law firm Sharinn & Lipshie, P.C., filed a collection lawsuit against now-Plaintiff Evelyn Centeno in Queens County Civil Court captioned *Asset Acceptance, LLC v. Evelyn Centeno*, CV-100795-03/QU. *See* **Exhibit _** (State Collection Lawsuit Complaint).

11. Defendants used a false affidavit of service and obtained a "sewer service" judgment.[2]

12. Because Ms. Centeno had no notice of the lawsuit, she did not answer or appear in court. The court entered a default judgment against her on December 3, 2003. *See* **Exhibit _** (Default Judgment).

13. Ms. Centeno did not know a judgment had been entered against her, and she never received a copy of the judgment or notice of entry in the mail.

14. At some point in November, 2017 S&L sent an Information Subpoena regarding the putative judgment to JPMorgan Chase Bank.

15. On November 15, 2017,[3] Chase responded to S&L's Information Subpoena to JPMorgan, identifying a checking account, a savings account, and a Certificate of Deposit ("CD") which, upon information and belief, was Ms. Centeno's Individual Retirement Account ("IRA"). *See* **Exhibit _** (Information Subpoena Response).

16. On or around January 5, 2018, S&L withdrew $6,501.62 in retirement savings from Ms. Centeno's IRA. In addition to these funds being exempt from enforcement of judgments (*see e.g.*

---

[2] "Plaintiffs allege that defendants did so by engaging in "sewer service"—the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service. When the debtors failed to appear in court because they did not have notice of the lawsuits, defendants obtained default judgments against them." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010).

[3] The handwritten notation of the date appears to be November 15, 2017, but it is not completely clear.

*Pauk v. Pauk,* 232 A.D.2d 392, 393, 648 N.Y.S.2d 134, 135 (1996)), the Exempt Income Protection Act mandates that the first $2,750 of any account to be exempt from execution. C.P.L.R. § 5205, 5222(i).

17. Ms. Centeno's IRA was comprised of funds from her income tax returns, diligently saved for her future every year.

18. Prior to this withdrawal of IRA funds, Ms. Centeno never received notice that her account would be restrained. She never received an exemption claim form, and she was never served with a summons and complaint for any law suit.

19. Ms. Centeno only learned of the garnishment because she visited a Chase branch on or around January 15, 2018 potentially making changes to her IRA. A Chase employee informed her that the funds had been taken and directed her to call S&L.

20. When Ms. Centeno learned that her precious savings had been taken in a single instant, she was devastated.

21. On or around January 27, 2018, Ms. Centeno sent a letter to S&L putting the law firm on notice that the funds it had taken were exempt IRA funds. *See* **Exhibit _** (January 27, 2018 Letter to S&L). The Letter also asked for the following information: (1) why the specific amount was garnished from her IRA; (2) who she allegedly owed money to; (3) how much money she allegedly owed and what portion of it was comprised of additional charges, interest, and fees; (4) what the date of the putative debt was; and (5) why Ms. Centeno never received notice of the collections lawsuit. *See* **Exhibit _** (Letter). Ms. Centeno also asked to be provided with a copy of whatever document evidenced the underlying debt. *See* **Exhibit _** (Letter). Annexed to this Letter was a printout given to Ms. Centeno by Chase entitled "Transaction History" for the

"NY/NJ/CT Retirement Account" that shows the garnishment on January 5, 2018 as a "PARTIAL IRA WITHDRAWAL." *See* **Exhibit _** (Letter).

22. She sent the letter from her PO Box address, PO Box 3621065, New York, NY 11365. This is also the address she uses on her New York State ID, issued in May 2017. *See* **Exhibit _** (Letter).

23. Ms. Centeno did not receive a response to her letter and Defendants did not return the funds upon receiving notice that they were exempt IRA funds.

24. In an Opposition motion S&L will later file in state court, S&L will contend that they sent a response letter but to an old address of Ms. Centeno, not the return address she put on her letter. S&L's response letter was signed by Scott Sharinn. *See* **Exhibit _** (January 23, 2018 Letter from Scott Sharinn). It is a terse, 5 sentence, boilerplate letter that does not address Ms. Centeno's contention and evidence that the funds are exempt. The letter indicates Defendants will continue their collection efforts. The letter is dated January 23, predating Ms. Centeno's January 27. Defendants allege that this is a "typographical error" and that the actual date of the letter was January 29. *See* **Exhibit _** (Opposition to the Order to Show Cause) ¶ 15, fn. 1.

25. Ms. Centeno did not know what to do or who to turn to for help. She did not understand that the word "judgment" meant that there had been a court proceeding against her.

26. Because she had never received any notice of the sewer service judgment or the execution, Ms. Centeno went back to Chase to try to find out what had happened. Chase told her to call New York City Marshal Henry Daley.

27. Marshal Daley's office informed her that the restraint was pursuant to a judgment in a 2003 case brought by Asset Acceptance, assignee of Fleet Bank.

28. Ms. Centeno retained CAMBA Legal Services ("CLS") in May of 2018. Because Ms.

Centeno had never received any notice of the judgment or the execution, CLS had to look up her name in eCourts and only then found the underlying action. Surprisingly however, Asset Acceptance's counsel was listed as "In House," not S&L.

29.     On May 3, 2018, CLS requested the court file but, because the judgment was so old, was told it would take 6 to 8 weeks to arrive. CLS called Marshal Daley for more information, and only then was able to obtain the Property Execution.

30.     On May 10, 2018 Ms. Centeno filed an Order to Show Cause ("OSC") to vacate the 2003 sewer service default judgment. *See* **Exhibit _** (Order to Show Cause).

31.     The OSC was served on both in house counsel for Asset Acceptance as listed on eCourts, and on S&L as the attorneys who ordered the execution on the IRA. *See* **Exhibit _** (OSC).

32.     In the OSC, Ms. Centeno once again reiterated that exempt IRA funds had been garnished, annexing a copy of account statements from July 31, 2017 to December 31, 2017 that identify the account as a "Traditional IRA." *See* **Exhibit _** (OSC), p. 27.

33.     After once again being informed that it had wrongfully garnished exempt funds, and had done so pursuant to a judgment obtained by sewer service, Defendants still did not return the funds. Instead, on May 21, 2018, Defendants filed their Opposition to Ms. Centeno's Order to Show Cause. *See* **Exhibit _** (Opposition to Order to Show Cause). The Opposition was signed by Defendant Shawn Clauther. *See* **Exhibit _** (Opposition). Surprisingly, Defendants did not dispute that they had garnished funds from an IRA.

34.     Instead, Defendants stated that because Chase identified the IRA as a certificate of deposit ("CD") in its response to the information subpoena, and because S&L received no exemption claim form, the subsequent property execution to New York City Marshal Henry Daley to execute on it was proper. *See* **Exhibit _** (Opposition) ¶ 28-32, 34.

35. This is a surprising misunderstanding of consumer bank accounts by Defendants as debt collectors. A traditional IRA's contributions can be invested in a CD – simply put, a designation of IRA and a designation of CD are not mutually exclusive.

36. Further, Defendants admitted that they had received Ms. Centeno's letter giving notice that the funds taken were exempt IRA funds. *See* **Exhibit _** (Opposition) ¶ 33. Nevertheless, they asserted that it was Ms. Centeno's fault that she did not get a response to this letter because she did not "contact[] Plaintiff's counsel to state that she did not receive Defendant's response." *See* **Exhibit _** (Opposition) ¶ 33.

37. As stated in Ms. Centeno's Reply to this Opposition, filed June 19, 2018, Chase's failure to identify the CD as an IRA CD does not indemnify Defendants of liability for garnishing it. *See* **Exhibit _** (Reply to Opposition to Order to Show Cause). Ms. Centeno failed to receive, and thus failed to submit, an exemption claim form, but that does not provide a backdoor for Defendants to garnish protected funds. CPLR § 5222-a ("[f]ailure of the judgment debtor to deliver the executed exemption claim form does not constitute a waiver of any right to an exemption").

38. Moreover, nowhere in their Opposition do Defendants even contend an Exemption Claim form was ever sent to Ms. Centeno, so their argument that they never received an exemption claim form is disingenuous. Certainly Ms. Centeno has never received an Exemption Claim Form from anyone at any time.

39. S&L makes a reference in its Opposition that it sent an information Subpoena and Restraint to Chase Bank. *See* **Exhibit _** (Opposition to Order to Show Cause) ¶ 10. S&L does not attach the document to its papers. In fact, it appears that S&L sent only an Information Subpoena to the bank, but not the Bank Restraint. Critically, S&L does not contend it sent Exemption Claim Forms to the Chase, which is required for any Bank Restraint to be valid. N.Y. CPLR

5222-a(b)(1). Moreover, Chase's response indicates it is only responding to an information subpoena, not a bank restraint. The Chase response states, "Memo: Information Subpoena – No Holds Placed." *See* **Exhibit** _ (Information Subpoena Response). Further, "Answer 6" of the Response reiterates "NO HOLDS PLACED." *See* **Exhibit** _ (Information Subpoena Response).

40. Overwhelming, irrefutable, and unchallenged proof that the funds were exempt was given both in the OSC and in the Reply:

- Account statements labeled "Traditional IRA," annexed as Exhibit A to the OSC.
- A "Transaction History" for the "NY/NJ/CT Retirement Account" that shows the garnishment on January 5, 2018 as a "PARTIAL IRA WITHDRAWAL," annexed to Ms. Centeno's January 27th Letter and as Exhibit B to the OSC.
- A "Deposit Account Balance Statement" that identifies the account as a Traditional IRA Money Market Account, annexed to the Reply as Exhibit E.

41. When Scott Sharinn would encounter CAMBA Legal Services attorney Divya Subrahmanyam in court, he would periodically comment that he had to return the funds taken from Ms. Centeno's IRA, but he did not.

42. On September 10, 2018, a Decision and Order was entered by the court vacating the default judgment, "[a]ny and all liens and restraints issued in connection with this judgment," and "any funds collected in connection with the enforcement of this judgment, including fees," and ordering those funds to "be returned to the defendant forthwith." *See* **Exhibit** _ (Decision and Order).

43. On October 24, 2018, Divya Subrahmanyam, counsel for Ms. Centeno, wrote Defendants Scott Sharinn and Shawn Clauther to once again ask that the funds be returned. *See* **Exhibit** _ (October 24, 2018 Email). The email noted that "after the most recent court date, you acknowledged that you were obligated to return the funds taken and indicated that you would initiate the process shortly." *See* **Exhibit** _ (October 24 Email).

44. On October 25, 2018, Defendant Scott Sharinn responded by email. *See* **Exhibit _** (October 25, 2018 Email). While disputing that the account had been improperly restrained, he acknowledged "I assured you I would help facilitate the payment." *See* **Exhibit _** (October 25 Email).

45. Further, Scott Sharinn admitted in the email that he "reported this to Asset and [was] awaiting their direction." *See* **Exhibit _** (October 25 Email). This is evidence that Asset had a role in directing the opposition to the Order to Show Cause. As previously noted, Asset had direct notice of the Order to Show Cause because the Court authorized and ordered a copy of the document to be mailed directly to Asset's in-house counsel, as well as to S&L.

46. On or around October 26, 2018 – more than 6 weeks after being ordered to do so -- Scott Sharinn finally mailed CAMBA Legal Services a check made out to Ms. Centeno in the amount of $5,498.89.

47. This leaves a substantial deficiency from the $6,501.66 garnished by Defendants.

48. To date, the remaining $1,002.73 taken from Ms. Centeno's IRA still has not been returned, nor have Defendants explained the discrepancy. Defendants' conversion of the $1,002.73 difference continues to this day.

49. Defendants' misconduct has inflicted damages in Ms. Centeno. The stress that Ms. Centeno has experienced, and continues to experience, from Defendants wrongful garnishment of her retirement savings is something she's never experienced before.

50. As a dietician, Ms. Centeno prides herself for her good health. But the stress from the garnishment of the IRA made her sick. In her own words, it was like a spell had been placed on her. She was so dizzy that she had trouble walking. She lost weight and even vomited at times.

51. The stress drastically impacted her sleep as well, causing her to wake up in the middle of

the night wondering why this was happening to her. She found herself crying nearly every day when she would pray about this injustice done to her.

52. She was very embarrassed that this was happening, and thus did not confide in others. She was worried that they would judge her, wondering how something like this could happen to a smart woman like her.

53. Ms. Centeno is 69 years old. Planning for her future was important, and to have her IRA garnished was an existential blow. The underlying purpose for IRA funds being exempt from garnishment is that the idea of taking that future savings away from those who need it is reprehensible to the fundamental values of our society.

## FIRST CLAIM FOR RELIEF

*Violations of the Fair Debt Collection Practices Act*

54. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

55. Defendants garnished Ms. Centeno's exempt IRA funds, failed to provide her notice of the garnishment, and refused despite clear and convincing evidence of their wrongdoing to return the funds. Even now, Defendants still have not returned around $1,000. In doing so, Defendants violated multiple sections of the FDCPA.

56. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

57. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff

– acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

58. This action falls within the ambit of the FDCPA for the following reasons:

   a. The obligation Defendants allege is owed to them is a "debt" as defined by 15 U.S.C. § 1692a(5) because it derives from a credit card account that was used primarily for family, personal or household purposes.

   b. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

   c. Asset Acceptance is a "debt collector" because it purchases charged-off consumer accounts in bulk from putative original creditors, or purchases the right to collect debts that are already in default, then attempts to collect on them using the mails and telephone.

   d. Asset Acceptance collects these debts directly or through sub-servicers. On information and belief, Sharinn & Lipshie is a subservicer for the putative debt it sought to collect from Ms. Centeno. On information and belief, Asset Acceptance exercises control or has the right to exercise control over the accounts it sends to sub-servicers.

   e. At all times Defendants Scott Sharinn and Shawn Clauther were acting as the agents of Asset Acceptance in seeking to collect the putative debt from Ms. Centeno. Asset Acceptance is therefore liable for their acts.

   f. S&L Defendants were counsels for a law firm whose principal purpose is the collection of debts. It regularly collects debts allegedly owed by consumers to others, through sending collection letters and other correspondence, filing lawsuits, and using post-judgment remedies

including income executions and bank account restraints.

g. S&L is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

h. Defendant Scott Sharinn was the managing attorney of S&L and personally engages in the above mentioned activities carried out by his firm. Like his firm, he regularly collects and attempts to collect debts owed or asserted to be owed to another by all the mechanisms enumerated above. Sharinn personally signed the Property Execution that caused Ms. Centeno's IRA funds to be garnished.

i. Scott Sharinn is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

j. Defendant Shawn Clauther personally signed the Opposition to the Order to Show Cause. His sole work is to engage in debt collection: his files complaints and motions in debt collection actions, and appears at Court for hearings on the debt collection lawsuits.

k. The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

59. Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§1692c, 1692e, 1692f, 1692g. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: failing to provide Ms. Centeno with required information about an alleged debt in response to her request for verification; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; making the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; communicating improperly with a third party; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

60.     Defendants' violations of 15 U.S.C. §1692, *et seq.*, render it liable to Plaintiff.

## SECOND CLAIM FOR RELIEF
### *Conversion*

61.     Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

62.     A cause of action for conversion lies when a plaintiff establishes a) her legal ownership of a specific, identifiable piece of property, and b) the defendant's interference with her property interest in defiance of her rights.

63.     Intent to possess another's property is not an essential element of conversion, nor does the converter need to take physical possession of the property. Any wrongful exercise of dominion over a piece of property by someone other than the owner constitutes a conversion.

64.     Property subject to conversion includes readily identifiable funds from a bank account.

65.     Here, Defendants garnished Ms. Centeno's IRA funds despite them being exempt. They knowingly and fraudulently exercised dominion over her exempt funds, interfering with her right to possession and ability to use her money for her and her family's expenses.

66.     Ms. Centeno repeatedly gave notice of the funds being from an IRA and thus exempt, and demanded their return.

67.     Defendants ignored these notices.

68.     Defendants continue, now in defiance of a court order as well, to exercise dominion over $1,002.73 of the exempt funds.

69.     Defendants' improper garnishment of Ms. Centeno's IRA funds, and continued refusal to return the entire amount, has harmfully interfered with her right to control her own property, and thus constitutes conversion.

70.     For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, the remaining funds that have not been returned, loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's money, and resulting

consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of her daily life.

### THIRD CLAIM FOR RELIEF
*Judiciary Law § 487*

71. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

72. S&L Defendants have been repeatedly and thoroughly notified that the funds they garnished from Ms. Centeno were exempt IRA funds. Despite this knowledge, Shawn Clauther executed and filed with the court the Opposition to the Order to Show Cause which alleged that Defendants had rightful ownership of those funds. And despite this knowledge, Scott Sharinn made multiple appearances in court to argue against the vacatur of the judgment and return of the exempt funds.

73. Thus Scott Sharinn and Shawn Clauther violated Judiciary Law § 487.

74. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for S&L Defendants' violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

### PRAYER

**WHEREFORE**, Plaintiff Evelyn Centeno respectfully requests the following relief:

a. Actual damages;

b. Statutory damages under 15 U.S.C. § 1692k;

c. Punitive damages for conversion;

d. Costs, disbursements and attorneys' fees under 15 U.S.C. § 1692k;

e. Prejudgment and post judgment interest as allowed by law;

    f.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 13, 2018
       Brooklyn, New York

Respectfully submitted,

/s/
_____
By: Melissa Koven

CAMBA LEGAL SERVICES, INC.
Melissa Koven, Of Counsel (MK-5512)
Elizabeth Miller, General Counsel
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311
MelissaK@camba.org

/s/
_____
By: Matthew Schedler

CAMBA LEGAL SERVICES, INC.
Matthew Schedler, Of Counsel (MS-3774)
Elizabeth Miller, General Counsel
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311
MatthewSc@camba.org

/s/
_____
Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
*Attorneys for the Plaintiff*